# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| RALF STRACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | _____ |
| CONSTELLIUM AUTOMOTIVE USA, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff RALF STRACK, by and through his undersigned counsel, brings this action to correct and remedy unlawful employment practices by Defendant CONSTELLIUM AUTOMOTIVE USA, LLC ("Defendant").

### *Jurisdiction and Venue*

1. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, and supplemental jurisdiction is invoked under 28 U.S.C. § 1367.

2. Venue for this action properly lies in the Northern District of Georgia because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia.

3. All conditions precedent to the institution of this lawsuit have been fulfilled, including Plaintiff's receipt of a notice of right to sue from the Equal Employment Opportunity Commission. Plaintiff's right to sue notice is attached hereto as Exhibit 1 and is a part hereof for all purposes pursuant to Fed. R. Civ. P. 10(c).

## *The Parties*

4. Plaintiff worked for Defendant as a Plant Manager at its manufacturing facility in Georgia.

5. Plaintiff is a resident of Coweta County, Georgia and a dual citizen of both Germany and the United States.

6. Defendant is a Delaware limited liability company with its principal office located at 1 Constellium Drive in White, Georgia.

7. Defendant can be served via its registered agent, CT Corporation System, located at 289 S. Culver St. in Lawrenceville, Georgia 30046.

8. At all times relevant to this action, Defendant has continually done business in the State of Georgia. Consequently, Defendant is subject to the jurisdiction of this Court.

9. At all times relevant to this action, Defendant has been an employer in an industry affecting commerce and has had more than fifty employees within 75

miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks of Plaintiff's employment.

10. At all times relevant to this action, Defendant has had fifteen or more employees for each working day in each of 20 or more calendar weeks in the current and preceding calendar year.

## *Factual Allegations*

11. Mr. Strack began working for Defendant in October 2019.

12. To formalize the employment relationship, Mr. Strack and Defendant entered into an employment contract.

13. Mr. Strack's employment contract called for, among other things, a $160,000 annual salary, a bonus opportunity of 20% of his base salary, a $950 monthly car allowance, a 401(k) match of 100% of the first 3% employee contribution, a 401(k) match of the next 3% employee contribution, and an employer contribution of 8.5% of Mr. Strack's annual salary into his 401(k) account.

14. In addition, Mr. Strack's employment contract stated:

> If the company decides to discharge you for any reason other than cause, as determined within the Company's sole discretion, you will receive severance pay in the form of salary continuation for three (3) months from the date of discharge.

15. At all relevant times, Mr. Strack performed his work duties satisfactorily for Defendant.

16. In October 2020, Shelby Edwards began work for Defendant in its Georgia plant as its General Manager.

17. Mr. Edwards was Mr. Strack's supervisor.

18. On October 12, 2020, during a discussion with Mr. Strack and another employee, Mr. Edwards told Mr. Strack that "we don't need fucking German engineers here." When Mr. Strack questioned Mr. Edwards about the comment, Mr. Edwards repeated it a second time.

19. Mr. Strack felt insulted and shocked by the comments, as he is a German engineer.

20. After Mr. Edwards made his derogatory comments, Mr. Strack complained about the comments to Rebecca Gamble in Defendant's human resources department.

21. Additionally, because of the high stress caused by the work environment, Mr. Strack suffered serious medical issues, including issues with his heart, and he reported these issues to Ms. Gamble.

22. As a result, Mr. Strack applied for leave under the Family and Medical Leave Act ("FMLA").

23. From October 13 to November 15, Mr. Strack was absent from work because of his medical issues.

24. While on medical leave for his heart condition, Mr. Strack stayed in frequent contact with Defendant's human resources department about his medical issues. These communications included that Mr. Strack would need additional leave for upcoming medical appointments and tests, his application for FMLA leave, and his application for short term disability leave.

25. While he was on medical leave, Mr. Strack discovered that Defendant had been searching for a replacement for his position. Mr. Strack discovered this information through a LinkedIn post in which Defendant was seeking a General Manager for its plant in Georgia.

26. On the morning of November 16, Mr. Strack returned to work.

27. At about 3:00 p.m. on November 16, Defendant informed Mr. Strack that his employment had been terminated and that he had to turn in his badge, computer and phone.

28. Defendant's termination of Mr. Strack's employment was surprising, as there had been no indication of an upcoming termination, it happened on the very day he returned to the office from medical leave, it occurred about a month

after Mr. Strack's communications with Defendant about his medical issues and the German-related comments, and it was not for cause.

29. Because Defendant's termination of Mr. Strack's employment was not for cause, Defendant was obligated under the employment contract to provide him with severance pay in the form of salary continuation for three months.

30. Defendant breached the employment contract when it failed to provide Mr. Strack with severance pay in the form of salary continuation for three months from the date of discharge.

31. Instead of providing Mr. Strack with three months of salary continuation, as the employment contract required, Defendant tried to get Mr. Strack to sign a Separation Agreement and General Release (the "General Release Agreement") to obtain the contractual severance payment.

32. In Defendant's General Release Agreement, Defendant offered to pay Mr. Strack $20,601.03, as well as $6,000 to use toward COBRA coverage, in exchange for Mr. Strack's agreement to (1) release Defendant from any potential legal claims he had against it (including ADA, FMLA and Title VII claims) and (2) maintain confidentiality about the General Release Agreement.

33. The amount that Defendant offered was not the three months of salary that Defendant was contractually obligated to pay Mr. Strack upon termination.

6

Moreover, the amount Defendant offered to Mr. Strack was conditioned on Mr. Strack giving up his legal rights.

34. After Mr. Strack questioned Defendant as to why the amount was less than the employment contract required, and why he was being asked to give up his legal rights in exchange for the contractually owed payout, Defendant presented Mr. Strack with an amended Separation Agreement and General Release (the "Second General Release Agreement").

35. In the Second General Release Agreement, Defendant offered to pay Mr. Strack $41,202.06 and $6,000 to use toward COBRA coverage. Again, however, Defendant conditioned its payment of these funds on Mr. Strack's agreement to (1) release it from any potential legal claims he had against it and (2) maintain confidentiality about the Second General Release Agreement.

36. After review of the Second General Release Agreement, Mr. Strack declined to sign it.

37. As of the date of this Complaint, Defendant has failed to pay Mr. Strack the amounts that it is contractually obligated to pay him.

38. Upon information and belief, Defendant has refused to compensate Mr. Strack in retaliation for his refusal to give up his legal rights and enter into the General Release Agreement and the Second General Release Agreement.

39. In addition to failing to pay Mr. Strack these contractually owed amounts, Defendant also failed to pay Mr. Strack the $950 monthly car allowance that it was contractually obligated to provide during Mr. Strack's employment.

## COUNT I

## BREACH OF CONTRACT

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 11 through 39 above.

41. Plaintiff and Defendant entered into a contract under which Plaintiff agreed to perform certain duties in exchange for Defendant's agreement to, among other things, compensate Plaintiff. Thus, a valid contract existed between Plaintiff and Defendant.

42. Plaintiff satisfactorily performed his duties under the contract.

43. Defendant materially breached its obligations under the contract when it failed to pay him three months of salary upon termination and the $950 monthly car allowance.

44. Plaintiff has suffered damages because of Defendant's breach, including but not limited to the compensation he was owed under the contract.

## COUNT II

## FMLA (29 U.S.C. § 206, et seq.) INTERFERENCE

45. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 and 11 through 28 above.

46. Defendant was an employer in an industry affecting commerce and has had more than fifty employees within 75 miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks during Plaintiff's employment. As a result, Defendant is and has been an "employer" under the FMLA.

47. Plaintiff was employed in excess of twelve months by Defendant and worked in excess of 1250 hours annually. Also, Plaintiff was unable to work because of his serious health condition. As a result, he was entitled to the benefits and protections of the FMLA.

48. Defendant interfered with Plaintiff's rights under the FMLA when it, among other things, failed to reinstate Plaintiff into the same or an equivalent position upon his return from leave and terminated his employment.

49. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered past and future pecuniary losses, lost back and front pay, interest on pay, and other benefits. These damages have occurred in the past,

are permanent, and are continuing.  Plaintiff is also entitled to liquidated damages, attorneys' fees, and costs.

## COUNT III

### FMLA (29 U.S.C. § 206, et seq.) RETALIATION

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 and 11 through 38 above.

51. Defendant was an employer in an industry affecting commerce and has had more than fifty employees within 75 miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks during Plaintiff's employment.  As a result, Defendant is and has been an "employer" under the FMLA.

52. Plaintiff was employed in excess of twelve months by Defendant and worked in excess of 1250 hours annually.  Also, Plaintiff was unable to work because of his serious health condition.  As a result, he was entitled to the benefits and protections of the FMLA.

53. Defendant retaliated against Plaintiff for taking FMLA leave when it, among other things, failed to reinstate Plaintiff into the same or an equivalent position upon his return from leave and terminated his employment.

54. Additionally, Defendant retaliated against Plaintiff for taking FMLA leave when it took an adverse employment action by, among other things, failing to compensate Plaintiff in accordance with the terms of his employment contract.

55. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered past and future pecuniary losses, lost back and front pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing. Plaintiff is also entitled to liquidated damages, attorneys' fees, and costs.

## COUNT IV

**(Discrimination in Violation of Title VII (42 U.S.C. § 2000d, et seq.))**

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 10 through 28 above.

57. At all relevant times, Defendant has been a covered employer under 42 U.S.C. § 2000e.

58. The effect of the employment practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin.

59. Defendant's termination of Plaintiff's employment based on his national origin constitutes a willful violation of Title VII of the Civil Rights Act of

1964, as amended, and was done with malice or with reckless indifference to the federally protected rights of Plaintiff, entitling Plaintiff to all relief afforded by the statute.

60. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering including depression, inconvenience, loss of enjoyment of life and other non-pecuniary losses, along with lost pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing, and Plaintiff is also entitled to punitive damages.

## COUNT V

**(Retaliation in Violation of Title VII (42 U.S.C. § 2000d, et seq.))**

61. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 10 through 38 above.

62. Plaintiff engaged in statutorily protected activity when he complained to Defendant about the anti-German comments made by his supervisor.

63. In response to Mr. Strack's protected complaints, Defendant retaliated against Plaintiff in two ways.

64. First, Defendant terminated Plaintiff's employment because of his protected activity.

65. Second, Defendant refused to pay Plaintiff the contractually owed compensation that it was obligated to provide him upon his termination.

66. Both of these retaliatory acts constitute unlawful intentional retaliation in violation of Title VII.

67. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

68. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering including depression, inconvenience, loss of enjoyment of life and other non-pecuniary losses, along with lost pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing, and Plaintiff is also entitled to punitive damages.

## COUNT VI

**(Discrimination in Violation of the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.))**

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 10 through 28 above.

70. "The ADA was enacted 'to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to

bring persons with disabilities into the economic and social mainstream of American life.'" *Harrison v. Benchmark Elecs. Huntsville, Inc.,* 593 F.3d 1206, 1212 (11th Cir. 2010) (quoting H.R. Rep. No. 101–485(II) at 23 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 304).

71. The effect of the employment practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability and/or perceived disability.

72. Defendant's termination of Plaintiff's employment based on his disability and/or perceived disability constitutes a willful violation of the Americans with Disabilities Act, as amended, and was done with malice or with reckless indifference to the federally protected rights of Plaintiff, entitling Plaintiff to all relief afforded by the statute.

73. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering including depression, inconvenience, loss of enjoyment of life and other non-pecuniary losses, along with lost pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing, and Plaintiff is also entitled to punitive damages.

## COUNT VII

**(Retaliation in Violation of the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.))**

74. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 10 through 38 above.

75. Under 42 U.S.C § 12203, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

76. Plaintiff engaged in statutorily protected activity when he sought leave for his medical condition, including his application for disability leave.

77. In response to Mr. Strack's protected activity, Defendant retaliated against Plaintiff in two ways.

78. First, Defendant terminated Plaintiff's employment because of his protected activity.

79. Second, Defendant refused to pay Plaintiff the contractually owed severance pay that it was obligated to provide him upon his termination.

80. Defendant's actions in failing to properly compensate Plaintiff and terminating his employment because of his protected activity, specifically his communications about his disability and/or perceived disability and his need for medical leave, constitutes unlawful intentional retaliation in violation of the Americans with Disabilities Act.

81. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

82. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering including depression, inconvenience, loss of enjoyment of life and other non-pecuniary losses, along with lost pay, interest on pay, and other benefits.  These damages have occurred in the past, are permanent, and are continuing, and Plaintiff is also entitled to punitive damages.

## COUNT VIII

**(Attorneys' Fees)**

83. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 8 and 11 through 39 above.

84. Plaintiff has, and continues to, incur reasonable and necessary attorneys' fees and expenses of litigation in connection with this lawsuit.

85. Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense as there is no bona fide controversy as to Defendant's liability.

86. Therefore, Plaintiff is entitled to recovery his attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court award:

(a) compensatory damages to compensate him for the mental and emotional distress he has suffered as a result of Defendant's conduct;

(b) back pay, front pay and lost benefits;

(c) punitive damages;

(d) liquidated damages;

(e) prejudgment interest;

(f) costs of suit, including expenses incurred herein;

(g) reasonable attorneys' fees; and

(h) such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff hereby demands a jury trial on all claims for which he has a right to a jury.**

DATED: June 2, 2022

                                            By:   /s/ Andrew Weiner
                                                        Andrew L. Weiner
                                                        Georgia Bar No. 808278
                                                        aw@wsjustice.com
                                                        Jeffrey B. Sand
                                                        Georgia Bar No. 181568
                                                        js@wsjustice.com
                                                        WEINER & SAND LLC
                                                        800 Battery Avenue SE
                                                        Suite 100
                                                        Atlanta, GA  30339
                                                        (404) 254-0842 (Tel.)
                                                        (404) 205-5029 (Tel.)
                                                        (800) 866-1482 (Fax)

                                                        Counsel for Plaintiff